**THE ATKIN FIRM, LLC**
Formed in the State of New Jersey
By: John C. Atkin, Esq.
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel.: (973) 285-3239
Fax: (833) 693-1201
JAtkin@atkinfirm.com
*Attorneys for Plaintiff Strike 3 Holdings, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>             Plaintiff,<br><br>   v.<br><br>JOHN DOE subscriber assigned IP address 173.63.148.25,<br><br>             Defendant. | Civil Case No. 2:19-cv-10252-KM-MAH<br><br>***Document Filed Electronically***<br><br>**Motion Date:  August 5, 2019** |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH PLAINTIFF'S SUBPOENA TO VERIZON, OR, IN THE ALTERNATIVE, TO PROCEED ANONYMOUSLY AND FOR A PROTECTIVE ORDER

---

**THE ATKIN FIRM, LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel.: (973) 285-3239
Fax: (833) 693-1201
*Attorneys for Plaintiff,*
*Strike 3 Holdings, LLC*

Of Counsel and on the brief:
John C. Atkin, Esq.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT FACTUAL & PROCEDURAL BACKGROUND .................................. 4

LEGAL ARGUMENT ............................................................................................... 5

   I.  STANDARD OF REVIEW ............................................................................. 5

   II.  COURTS IN THIS DISTRICT AND AROUND THE COUNTRY HAVE ALREADY
      REJECTED DEFENDANT'S ARGUMENTS ............................................... 6

   III. STRIKE 3'S LITIGATION IS APPROPRIATE ........................................... 10

   IV. PLAINTIFF HAS ESTABLISHED THIS COURT'S JURISDICTION OVER
      DEFENDANT ............................................................................................ 16

   V.  PLAINTIFF'S RIGHT TO CONTINUE WITH ITS LITIGATION OUTWEIGHS
      DEFENDANT'S MINIMAL PRIVACY INTERESTS AND THE SUBPOENA
      IMPOSES NO BURDEN ON DEFENDANT .............................................. 25

   VI. STRIKE 3 HAS ADEQUATELY PLED A CAUSE OF ACTION FOR
      INFRINGEMENT, AND THE SUBPOENA WILL ENABLE STRIKE 3 TO CONNECT
      DEFENDANT WITH THE INFRINGEMENT OF STRIKE 3'S WORKS. ................... 31

   VII. STRIKE 3 DOES NOT OPPOSE DEFENDANT PROCEEDING ANONYMOUSLY 38

CONCLUSION ......................................................................................................... 39

# TABLE OF AUTHORITIES

## Cases

*Abreu v. Verizon of New York, Inc.*, No. 15-58, 2018 WL 1401326 (E.D.N.Y. Mar. 20, 2018) ................................................................................................23

*Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. Kg. v. Does 1-4*, 577, 736 F. Supp. 2d 212, 216 (D.D.C. 2010) .............................................................27

*Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) ................ 31, 38

*Criminal Prods., Inc. v. Doe-*, No. CV 16-2589 WQH (JLB), 2016 WL 6822186 (S.D. Cal. Nov. 18, 2016) .....................................................................18

*Crocs, Inc. v. Effervescent, Inc.*, No. 06-605, 2017 WL 3888455 (D. Colo. Jan. 30, 2017) .......................................................................................................6

*DigiProtect USA Corp. v. Does*, No. 10-8760, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) ................................................................................................17

*Doe v. Chiquita Brands Int'l, Inc.*, No. 07-3406, 2018 WL 497322 (D.N.J. Jan. 19, 2018) ......................................................................................................17

*Ed. Testing Serv. v. Katzman*, 631 F. Supp. 550, 565 (D.N.J. 1986) .....................16

*Fogerty v. Fantasy*, Inc., 510 U.S. 517, 526–27 (1994) ..........................................15

*Fonovisa, Inc. v. Does 1–9*, 2008 WL 919701 (D.N.J. Apr. 3, 2008)....................35

*Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3rd Cir. 1985)...17

*Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) ..............................17

*Malibu Media LLC v. Doe*, No. 16-01996.............................................................20

*Malibu Media LLC v. Doe*, No. 16-01996, ECF No. 13 (N.D. Cal. June 20, 2016) (Alsup, J.).....................................................................................................20

*Malibu Media v. Rahuse*, No. 14-6976, 2015 WL 2231853 (D.N.J. May 11, 2015) ............................................................................................................ 22, 36

*Malibu Media, LLC v. Doe 24.0.91.59*, No. 16-1739, 2017 WL 1050573 (D.N.J. Mar. 20, 2017).................................................................................................35

*Malibu Media, LLC v. Doe*, No. 14-1280, 2014 WL 12616840 (E.D. Pa. May 19, 2014) ............................................................................................................35

*Malibu Media, LLC v. Doe*, No. 14-20393, 2014 WL 11958625 (S.D. Fla. July 17, 2014) ............................................................................................................35

*Malibu Media, LLC v. Doe*, No. 15-3185, 2016 WL 4773127 (D. Md. Sept. 13, 2016) ............................................................................................................35

*Malibu Media, LLC v. Doe*, No. 15-4381, 2015 WL 4923114 (S.D.N.Y. Aug. 18, 2015) ...................................................................................................... 16, 29

*Malibu Media, LLC v. Doe*, No. 16-1739, 2017 WL 1050573 (D.N.J. Mar. 20, 2017) ............................................................................................................35

*Malibu Media, LLC v. Doe*, No., 2014 WL 2581168 (N.D. Ill. June 9, 2014) 11, 16

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 780–81 (E.D. Pa. 2013) ....................................................................................................15

*Malibu Media, LLC v. John Does 1-11*, Dkt. No. 12-cv-07615 (D.N.J. Feb. 26, 2013) ....................................................................................................................12

*Malibu Media, LLC v. John Does* 1–11, No. 12-3810, 2013 WL 3732839 (S.D.N.Y. July 16, 2013) ..................................................................................35

*Malibu Media, LLC v. John Does 1-11*, No. 12-7726, 2013 WL 1504927 (D.N.J. Apr. 11, 2013 .....................................................................................................7

*Malibu Media, LLC v. John Does 1-19*, No. 12-06945 (D.N.J. Mar 28, 2013) ......12

*Malibu Media, LLC v. John Does 1-22*, No. 12-5091, 2013 WL 1704291 (D.N.J. Apr. 19, 2013) ........................................................................................11

*Malibu Media, LLC v. Surgent*, No. 12-3905, 2013 WL 1704289, (D.N.J. Apr. 19, 2013) ....................................................................................................................11

*Malibu Media, LLC v. Tsanko*, No. 12-3899, 2013 WL 6230482 (D.N.J. Nov. 30, 2013) ....................................................................................................................35

*Malibu Media, LLC, v. Doe*, No. 3:15-02919 (ECF No. 6) (S.D. Cal. Feb. 17, 2016) ....................................................................................................................20

*Malibu Media, LLC, v. Doe*, No. 3:15-02931 (ECF No. 6) (S.D. Cal. March 17, 2016) ....................................................................................................................20

*Malibu Media, LLC, v. Doe*, No. 3:15-02933 (ECF No. 5) (S.D. Cal. Feb. 17, 2016) ....................................................................................................................20

*Modern Woman, LLC v. Does 1-X*, Dkt. No. 12- 4858 (D.N.J. Feb. 27, 2013) ......12

*Modern Woman, LLC v. Does 1-X*, Dkt. No. 12-4859 (D.N.J. Feb. 26, 2013) ........12

*Modern Woman, LLC v. Does 1-X*, Dkt. No. 12-4860 (D.N.J. Feb. 27, 2013) .......12

*Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40 (D.D.C. 2011)..............18

*Patrick Collins, Inc. v. Does 1-43*, No. 12-3908, 2013 WL 12170608 (D.N.J. Feb. 15, 2013) ........................................................................................................12

*Patrick Collins, Inc. v. John Doe* 1, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) ...35

*Patrick Collins, Inc. v. John Does 1-13*, No. 12-7620, 2013 WL 3466833 (D.N.J. July 10, 2013)................................................................................... 5, 27, 28, 30

*Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987) ....................................................................................................................17

*R.Q.C. Ltd. v. JKM Enterprises, Inc.*, No. 13-307, 2014 WL 4792148 (W.D. Pa. Sept. 23, 2014) ....................................................................................................25

*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) .....................................14

*SBO Pictures, Inc. v. Does 1-20*, No. 12-3925, 2012 WL 2304253 (S.D.N.Y. June 18, 2012) ......................................................................................................18

*See Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018)....30

*Simons v. Arcan, Inc.*, No. 12-1493, 2013 WL 1285489 (E.D. Pa. Mar. 28, 2013)25

*Singletary v. Penn. Dep't of Corr.*, 266 F.3d 186, 201 (3d Cir. 2001)...................36

*Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, at 566-67 (S.D.N.Y. 2004) ................................................................................................27

*Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ....................................36

*Spanski Enterprises, Inc. v. Telewizja Polska S.A.*, 222 F. Supp. 3d 95, 106 (D.D.C. 2016) ................................................................................................18

*Strike 3 Holding, LLC v. Doe*, Dkt. No. 18-14120 (D.N.J. June 3, 2019 .................6

*Strike 3 Holding, LLC v. Doe*, No. 18-1561, 2019 WL 1620414 (D. Conn. Apr. 16, 2019) ................................................................................................7

*Strike 3 Holdings, LLC v. Doe*, 325 F.R.D. 499, 503 (D.D.C. 2018).............. 17, 38

*Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246 (W.D.N.Y. 2018) ...................7

*Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 253–54 (W.D.N.Y. 2018) .....9

*Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 256 (W.D.N.Y. 2018) .........26

*Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 257 (W.D.N.Y. 2018).. 13, 16

*Strike 3 Holdings, LLC v. Doe*, No. 17-08956 (S.D.N.Y. Mar. 8, 2018) ..................8

*Strike 3 Holdings, LLC v. Doe*, No. 17-9659, 2018 WL 2371730 (S.D.N.Y. May 23, 2018) ................................................................................................7

*Strike 3 Holdings, LLC v. Doe*, No. 18-01490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019) ................................................................................................22

*Strike 3 Holdings, LLC v. Doe*, No. 18-01506 (E.D. Va. Feb. 27, 2019) .................7

*Strike 3 Holdings, LLC v. Doe*, No. 18-01874 (D. Md. Oct. 26, 2018) ....................9

*Strike 3 Holdings, LLC v. Doe*, No. 18-01896, 2019 WL 2188763 (D.D.C. Mar. 27, 2019) ................................................................................................23

*Strike 3 Holdings, LLC v. Doe*, No. 18-02019 (N.D. Cal. Sep. 14, 2018) ..............13

*Strike 3 Holdings, LLC v. Doe*, No. 18-02637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019) ................................................................................................22

*Strike 3 Holdings, LLC v. Doe*, No. 18-03763 (N.Y.E.D. Nov. 14, 2018) .............13

*Strike 3 Holdings, LLC v. Doe*, No. 18-04993, 2019 WL 468816 (N.D. Cal. Feb. 6, 2019) ................................................................................................38

*Strike 3 Holdings, LLC v. Doe*, No. 18-10619 (D.N.J. Mar. 15, 2019)... 6, 7, 19, 24, 25, 26

*Strike 3 Holdings, LLC v. Doe*, No. 18-12609 (D.N.J. June 27, 2019) ... 6, 7, 13, 26, 28

*Strike 3 Holdings, LLC v. Doe*, No. 18-14060 (E.D. Mich. May 31, 2019) ........7, 22

*Strike 3 Holdings, LLC v. Doe*, No. 18-14114, ECF No. 31 (D.N.J. June 14, 2019) 8

*Strike 3 Holdings, LLC v. Doe*, No. 18-14124, ECF No. 12 (D.N.J. Mar. 15, 2019) ................................................................................................24

*Strike 3 Holdings, LLC v. Doe*, No. 18-14134, ECF No. 12 (D.N.J. Mar. 15, 2019) ................................................................................................24

*Strike 3 Holdings, LLC v. Doe*, No. 18-14138 (D.N.J. June 27, 2019) .......... 6, 7, 26

*Strike 3 Holdings, LLC v. Doe*, No. 18-1490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019) ..............................................................................................13
*Strike 3 Holdings, LLC v. Doe*, No. 18-1762 (E.D. Pa. Oct. 2, 2018).............. 13, 29
*Strike 3 Holdings, LLC v. Doe*, No. 18-1874 (D. Md. Oct. 26, 2018).................7, 22
*Strike 3 Holdings, LLC v. Doe*, No. 18-1945, 2019 WL 1122984 (D. Conn. Mar. 12, 2019) ..............................................................................................7
*Strike 3 Holdings, LLC v. Doe*, No. 18-2211, 2019 WL 1778054 (D.D.C. Apr. 23, 2019) ..............................................................................................22
*Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019) ..............................................................................................7
*Strike 3 Holdings, LLC v. Doe*, No. 18-2716 (S.D. Cal. Mar. 6, 2019) .................20
*Strike 3 Holdings, LLC v. Doe*, No. 18-2719 (S.D. Cal. Mar. 6, 2019) .................20
*Strike 3 Holdings, LLC v. Doe*, No. 18-2720, 2018 WL 6649504 (S.D. Cal. Dec. 18, 2018) ..............................................................................................38
*Strike 3 Holdings, LLC v. Doe*, No. 18-47, 2018 WL 1427002 (S.D. Cal. Mar. 22, 2018) ..............................................................................................16
*Strike 3 Holdings, LLC v. Doe*, No. 18-4993, 2019 WL 468816 (N.D. Cal. Feb. 6, 2019) ..............................................................................................7
*Strike 3 Holdings, LLC v. Doe*, No. 18-5223, 2019 WL 1429331 (E.D. Pa. Mar. 29, 2019) ........................................................................................ 13, 22
*Strike 3 Holdings, LLC v. Doe*, No. 18-5238 (E.D. Pa. Feb. 11, 2019) .................22
*Strike 3 Holdings, LLC v. Doe*, No. 18-5238, ECF No. 10 (E.D. Pa. Feb. 11. 2019) ..................................................................................................7, 9
*Strike 3 Holdings, LLC v. Doe*, No. 18-6488 (N.D. Ill. April 4, 2019) ..................22
*Strike 3 Holdings, LLC v. Doe*, No. 18-989, ECF No. 5 (S.D. Cal. July 5, 2018) ..20
*Strike 3 Holdings, LLC v. Doe*, No. 19-00167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019) ..............................................................................................36
*Strike 3 Holdings, LLC v. Doe*, No. 19-00232, 2019 WL 591460 (N.D. Cal. Feb. 13, 2019) ..............................................................................................38
*Strike 3 Holdings, LLC v. Doe*, No. 19-00733 (S.D.N.Y. June 26, 2019) ...............7
*Strike 3 Holdings, LLC v. Doe*, No. 19-0167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019) ..............................................................................................7
*Strike 3 Holdings, LLC v. Doe*, No. 19-06144 (W.D.N.Y. July 2, 2019).................7
*Strike 3 Holdings, LLC v. Doe*, No. 19-06202 (W.D.N.Y. July 2, 2019).................7
*Strike 3 Holdings, LLC v. Doe*, No. 19-10923 (E.D. Mich. July 15, 2019) .............8
*Strike 3 Holdings, LLC v. Doe*, No. 19-723, 2019 WL 2996428 (N.D. Cal. July 9, 2019) ........................................................................................ 22, 34, 36
*Strike 3 Holdings, LLC v. Doe*, No. 19-73, 2019 WL 777416 (S.D. Cal. Feb. 21, 2019) ..............................................................................................38

*Strike 3 Holdings, LLC v. Doe*, No. 19-74, 2019 WL 1077548 (S.D. Cal. Mar. 7, 2019) ...............................................................................................................20

*Strike 3 Holdings, LLC v. Doe*, No. 19-75, ECF No. 7 (S.D. Cal. Mar. 8, 2019) ...20

*Strike 3 Holdings, LLC v. Doe*, No. 19-80, ECF No. 7 (S.D. Cal. Mar. 6, 2019) ...20

*Strike 3 Holdings, LLC v. Doe*; No. 19-00723, 2019 WL 2996428 (N.D. Cal. July 9, 2019) ...............................................................................................................7

*Strike 3 Holdings, LLC v. Doe*; No. 19-140 (C.D. Cal. July 16, 2019) ....................7

*Strike 3 Holdings, LLC v. Doe*; No. 19-811 (E.D. Pa. May 7, 2019) ........................7

*Strike 3 Holdings, LLC v. John Doe*, No. 18-1856 (D. Nev. Oct. 17, 2018) ...........38

*Strike 3 Holdings, LLC v. Olenick*, Dkt. No. 18-12605 (D.N.J. May 14, 2019) .....23

*Strike 3 Holdings, LLC, v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018) .....................21

*Strike 3 Strike 3 Holdings, LLC v. Doe*, No. 18-47, 2018 WL 1427002, ECF No. 7 (S.D. Cal. Mar. 22, 2018) ................................................................................20

*Third Degree Films, Inc. v. Does 1-108*, No. 11-3007, 2012 WL 669055 (D. Md. Feb. 28, 2012) .....................................................................................................27

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975) ......................15

*United States v. Richardson*, No. 11-3116, 2012 WL 10382 (D. Neb. Jan. 3, 2012) .............................................................................................................................18

*United States v. Tillotson*, No. CR 2:08-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) .....................................................................................................................18

*Vasquez v. Torres Negron*, 434 F. Supp. 2d 199, 202 (S.D.N.Y. 2006) .................16

**Statutes**

47 U.S.C. § 551(c)(2)(B) .............................................................................................26

**Other Authorities**

Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105, 1108 (2015) ...........................................................................................................14

Shyamkrishna Balganesh & Jonah B. Gelbach, *Debunking the Myth of the Copyright Troll Apocalypse*, 101 Iowa L.Rev. Bull. 43, 48–49 (2015–2016) ..14

U.S. Const. Art. 1, § 8, cl. 8 ........................................................................................15

**Rules**

28 U.S.C. § 1400(a) .....................................................................................................16

Fed. R. Civ. P. 45(c)(3)(A)(iii) ...................................................................................27

## PRELIMINARY STATEMENT

Plaintiff, Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3"), by and through its attorneys, The Atkin Firm, LLC, respectfully submits this Memorandum of Law in Opposition (in part) to Defendant John Doe Subscriber Assigned IP Address 173.63.148.25's ("Defendant") Motion to Quash Plaintiff's Subpoena to Verizon, or in the Alternative, to Proceed Anonymously and For a Protective Order ("Motion").

The Court previously found good cause, *ex parte*, to allow Strike 3 to serve a subpoena on Defendant's ISP to obtain the name and address of the subscriber assigned the IP address used to infringe on Strike 3's works.  Defendant now seeks to quash the subpoena that the Court authorized.  However, all of the arguments raised in support of the motion to quash have already been rejected – repeatedly, consistently, and recently – by courts in New Jersey and across the country.

The bulk of Defendant's Motion is not concerned with new law or new facts – indeed they raise none – but with collateral attacks (1) smearing Strike 3, and BitTorrent copyright litigation in general, for attempting to stop the theft of its works by Defendant by highlighting that many people are stealing Strike 3's works, and recounting misdeeds by unrelated bad actors that have nothing to do with Strike 3; (2) urging the Court to follow a non-controlling and disfavored decision from the District of Columbia; (3) attacking the well-accepted methods and tools with which Strike 3 has made its *prima facie* showing of personal jurisdiction and venue without

1

offering *any* evidence to rebut that showing; and (4) arguing that the subpoenaed information – the subscriber's name and address – is irrelevant, based on the flawed assertion that this Court should apply the standards applicable to amended complaints, filed *after* a subpoena response is received, to the John Doe complaint filed *before* the subpoena response is received.  All of these arguments are meritless.

The fact that Strike 3's works are so popular to steal only shows how important it is that Strike 3 be allowed to proceed with this lawsuit; it does not provide grounds to deprive Strike 3 of its First Amendment right to petition the courts for redress to combat this flood of infringement.  Defendant hopes to distract the Court from his or her theft by suggesting that Strike 3 *might* engage in improper tactics like prior bad actors in copyright infringement actions past.  But Defendant has not, cannot, and will never be able to point to any improper action by Strike 3 or its counsel.  Just as Strike 3 holds itself above its competition, it similarly stands head-and-shoulders above other copyright infringement plaintiffs – relying on proven and reliable state-of-the-art technology, never contacting defendants seeking settlements, and always agreeing to protective orders and confidentiality agreements when requested.  In short, there is only one bad actor here, and it is Defendant.

Similarly, the District of Columbia opinion cited by Defendant provides no new grounds to quash the subpoena.  In fact, it has been explicitly rejected by numerous courts when denying similar motions to quash court-authorized

subpoenas.  This trend in case law is undeniable, arcing toward correct outcomes and away from the flawed rhetoric that Opinion has provided as fodder for every defendant's motion to quash filed in these matters.

In support of the third ground, Defendant offers nothing but the unsupported assertion that "questions exist" about the ability to use geolocation technology for purposes of making out a *prima facie* case of personal jurisdiction and venue against an anonymous internet user – but that is just not true.  Courts and law enforcement agencies alike rely on the well-recognized accuracy of Strike 3's geolocation service for the very same service that Strike 3 uses it:  locating anonymous defendants to prosecute internet-based crimes.  And Defendant provides *no* evidence to rebut Strike 3's *prima facie* showing, despite it being well within Defendant's ability to do so.  He or she could merely reveal his or her city and state address, which is already in a redacted exhibit before the Court.  Defendant's failure to do so is telling.

Finally, with respect to the fourth ground, Defendant's relevance argument is squarely at odds with established precedent and just plain common sense.  Strike 3 requires the subpoenaed information to complete its investigation into whether a good faith basis (continues) to exist to proceed with this matter and, if so, to serve Defendant with process.  If no good faith basis continues to exist, Strike 3 will dismiss its claim, but nothing in the case law suggests a defendant is able to stop that investigation from occurring in the first place.

In short, Defendant has failed to satisfy his or her burden to warrant quashing the subpoena and the Motion should be denied (in part).  As it does in all matters, Strike 3 does not oppose the entry of a protective order allowing Defendant to proceed anonymously.

### RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Strike 3 owns the intellectual property of the award-winning adult entertainment studios *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen*.  *See* Declaration of Greg Lansky [ECF No. 4-2, ¶ 3, 19].  Strike 3's philosophy is to hold itself above the rest:  higher budgets, higher compensation for its actors and actresses, and higher end productions.  *Id.* at ¶ 7–8, 11–13, 15.  Despite its success, Strike 3 does not rest on its back-catalogue and is continually seeking out new opportunities and ventures to provide subscribers with a better experience.  *Id.* at ¶ 15.  Strike 3's business has "raised the bar" for the rest of the industry, "leading more adult studios to invest in better content, higher pay for performers, and to treat each performer like an artist."  *Id.* at ¶ 21.

As a result of its higher production and talent costs, Strike 3 is sensitive to the loss of revenue that mass copyright infringement threatens.  *Id.* at ¶ 24. Despite attempting to mitigate the infringement outside the courts, *see id.* at ¶ 26 (sending thousands of DMCA takedowns to infringing websites), lawsuits like this have become an option of last resort.  *Id.* at ¶ 27. Plaintiff understands the delicate nature

4

of these suits, and has put in place protocols, including inviting this Court to implement a protective order, which Plaintiff will respect and carry out faithfully. *See* [ECF No. 4-1 at 13].

Defendant is accused of downloading, distributing, and hence infringing numerous different works of Plaintiff across the BitTorrent network. *See generally* [ECF Nos. 1 and 1-1] (listing the copyrights-in-suit).  Plaintiff moved to serve an early subpoena on Defendant's ISP for the limited purpose of identifying and serving Defendant (while maintaining Defendant's anonymity) in accordance with the Federal Rules of Civil Procedure. [ECF No. 4].  The Court granted Plaintiff's motion on June 4, 2019, [ECF No. 5], and after Plaintiff served its subpoena on Defendant's ISP, Defendant filed the instant Motion [ECF No. 11], which makes up the present controversy.

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW

Defendant bears "a heavy burden" to prevail on his or her Motion to Quash. *Malibu Media, LLC v. John Does 1-18*, No. 12-07789, 2014 WL 229295, at *6 (D.N.J. Jan. 21, 2014).  "The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of [Fed. R. Civ. P. 45] are satisfied." *Patrick Collins, Inc. v. John Does 1-13*, No. 12-7620, 2013 WL 3466833, at *2 (D.N.J. July 10, 2013) (citations omitted).  "In relevant part, Rule 45 provides that on timely

motion, the issuing court must quash a subpoena that: '(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to an undue burden.'" *Malibu Media, LLC v. John Does 1-18*, No. 12-07789, 2014 WL 229295, at *6 (D.N.J. Jan. 21, 2014) (quoting Fed. R. Civ. P. 45(c)(3)(A)(iii)–(iv)). "Absent a finding by a court that a valid basis exists to quash a subpoena, the party receiving the subpoena *must comply* with it." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-605, 2017 WL 3888455, at *2 (D. Colo. Jan. 30, 2017) (collecting cases) (emphasis original).

## II. COURTS IN THIS DISTRICT AND AROUND THE COUNTRY HAVE ALREADY REJECTED DEFENDANT'S ARGUMENTS

As a preliminary matter, Strike 3 respectfully notes that, although not binding on this Court, several courts in this District have already rejected the arguments raised by Defendant and denied similar (or identical) motions to quash in Strike 3 matters. *See Strike 3 Holdings, LLC v. Doe*, No. 18-10619, ECF No. 42 (D.N.J. July 1, 2019) (Certification of John C. Atkin, Esq., ¶ 2, Ex. A (dated July 22, 2019) [hereinafter "Atkin Cert."]); *Strike 3 Holdings, LLC v. Doe*, No. 18-14138, ECF No. 15 (D.N.J. June 27, 2019) (Atkin Cert. ¶ 3, Ex. B); *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 (D.N.J. June 27, 2019) (Atkin Cert. ¶ 4, Ex. C). And while Your Honor has only denied a motion to quash, without prejudice, in one Strike 3 matter based on procedural grounds, *Strike 3 Holding, LLC v. Doe*, Dkt. No. 18-14120, ECF No. 12 (D.N.J. June 3, 2019) (Hammer, J.), this Court has previously

6

denied a similar motion to quash in a non-Strike 3 matter. *See Malibu Media, LLC v. John Does 1-11*, No. 12-7726, 2013 WL 1504927 (D.N.J. Apr. 11, 2013) (Hammer, J.).

In fact, with only one exception, Strike 3 has won every motion to quash filed to date – a list that gets longer every day.[1]  The only case in which a motion to quash has been granted on substantive grounds is *Strike 3 Holdings, LLC v. Doe*, No. 17-

---

[1] *Strike 3 Holdings, LLC v. Doe*; No. 19-140, ECF No. 24 (C.D. Cal. July 16, 2019); *Strike 3 Holdings, LLC v. Doe*; No. 19-00723, 2019 WL 2996428 (N.D. Cal. July 9, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-06202, ECF No. 12 (W.D.N.Y. July 2, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-06144, ECF No. 11 (W.D.N.Y. July 2, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-10619, ECF No. 42 (D.N.J. July 1, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-14138, ECF No. 15 (D.N.J. June 27, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 (D.N.J. June 27, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-00733, ECF No. 17 (S.D.N.Y. June 26, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-14060, ECF No. 14 (E.D. Mich. May 31, 2019); *Strike 3 Holdings, LLC v. Doe*; No. 19-811, ECF No. 11 (E.D. Pa. May 7, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-0167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019); *Strike 3 Holding, LLC v. Doe*, No. 18-1561, 2019 WL 1620414 (D. Conn. Apr. 16, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-1490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-5223, 2019 WL 1429331 (E.D. Pa. Mar. 29, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-1945, 2019 WL 1122984 (D. Conn. Mar. 12, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-01506, ECF No. 18 (E.D. Va. Feb. 27, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-5238, ECF No. 10 (E.D. Pa. Feb. 11. 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-4993, 2019 WL 468816 (N.D. Cal. Feb. 6, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-2648, 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246 (W.D.N.Y. 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-1874, ECF No. 17 (D. Md. Oct. 26, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-02019, ECF No. 29 (N.D. Cal. Sep. 14, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 17-9659, 2018 WL 2371730 (S.D.N.Y. May 23, 2018).

08956, ECF No. 15 (S.D.N.Y. Mar. 8, 2018) (Hellerstein, J.) ("SDNY Opinion").[2] In that matter, the Court granted the Doe defendant's motion to quash, holding that Strike 3 did not sufficiently identify its works in its Complaint, stating that "[b]y failing to identify which copyrighted materials Plaintiff owns, and which materials Defendant infringed on, the Complaint fails to contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Id.* at *2 (citation omitted).

However, while Strike 3 could easily list the titles of the motion pictures Defendant downloaded and distributed in its complaint, it only lists the motion pictures' registration numbers to eliminate any suggestion of improperly leveraging the nature of the content in its litigations.  The titles to the works can be ascertained by a search of the registration numbers on the Copyright Office website, and Strike 3 provides the titles to any court or defendant immediately upon request.  Indeed, the SDNY Opinion is of particularly little value to Defendant here, since their counsel was clearly able to find the titles of the works to quote them to the Court in Defendant's moving papers.  *See* [ECF No. 6-3 at 2, 29] (stating four examples of the titles of Strike 3's works at issue).

---

[2] Strike 3's subpoenas have been quashed *sua sponte* in two matters where the defendant revealed their name and address to Strike 3, thereby rendering the subpoena to the ISP, for information Strike 3 already possessed, an "undue burden." *See Strike 3 Holdings, LLC v. Doe*, No. 19-10923 ECF No. 17 (E.D. Mich. July 15, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-14114, ECF No. 31 (D.N.J. June 14, 2019).  That has not occurred in this matter.

More importantly, other courts that have considered the SDNY Opinion have declined to follow it, holding instead that a complaint listing the registration numbers of the copyrighted works at issue is sufficient:

> Defendant relies on an unreported decision from the Southern District of New York in support of her/his argument that the Complaint fails to state a claim. (*See* Dkt. 12-2 at 8-9 (citing *Strike 3 Holdings, LLC v. John Doe*, No. 1:17-cv-08956 (AKH), Dkt. 15 at 2 (S.D.N.Y. Mar. 8, 2018)). Defendant's reliance upon this decision is misplaced. The court there stated that the exhibit attached to the complaint did not provide the copyright registration numbers or any other identifying information for the copyrighted material, and that consequently the complaint did not "contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 2 (quotation and citation omitted). In contrast, the Complaint in the instant case contains copyright registration numbers for each of the materials alleged to be infringed upon, and the names of the Works can be obtained free of charge on the Copyright Office's website using said registration numbers. (Dkt. 1-1 at 1-5). Consequently, the reasoning advanced by the Southern District case is inapplicable here.

*Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 253–54 (W.D.N.Y. 2018); *see Strike 3 Holdings, LLC v. Doe*, No. 18-05238, ECF No. 10 (E.D. Pa. Feb. 11. 2019) (denying motion to quash); *Strike 3 Holdings, LLC v. Doe*, No. 18-01874, ECF No. 17 (D. Md. Oct. 26, 2018) ("Strike 3's Complaint complies with Rule 8's pleading standard. Doe overlooks Exhibit A to the Complaint, which lists the specific copyrighted materials that Doe allegedly infringed upon. The list provides more than enough factual matter to plausibly state a claim upon which relief can be granted.") (citations omitted).

In short, Defendant already *knows* the names of the titles of the works at issue here, and even if they did not, the Complaint in this matter attached as "Exhibit A" a list of the copyright registration numbers for each of the works that are alleged to be infringed.  [ECF No. 1-1].  And Strike 3 stands ready, willing, and able to file an amended version of Exhibit A, listing the title of each work, if the Court feels that is necessary for this matter to proceed.  Accordingly, this cannot form a valid basis for quashing the subpoena.

Although not binding on the Court, Judge Waldor's and Judge Goodman's three recent decisions persuasively rejected Defendant's arguments, a fact that Defendant all but concedes by their decision to omit these decisions from the Motion, rather than make any effort to explain them away.  Strike 3 respectfully submits these recent decisions got it right and, accordingly, this Court should follow suit and deny Defendant's motion to quash.

## III.   STRIKE 3'S LITIGATION IS APPROPRIATE

Although not a valid basis to quash the subpoena, Defendant begins their brief attempting to describe Strike 3, and BitTorrent copyright infringement litigation in general, in misleading ways, hoping the Court will conflate Strike 3 with past bad actors and rule on that basis rather than the merits.  The Court should not be fooled. Defendant does not like the fact that Strike 3 uses reliable technology to detect infringement and scrupulously adheres to the rules established by this and other

10

courts to bring these suits.  Defendant's displeasure is understandable – by doing so, Strike 3 is able to bring Defendant to justice for stealing Strike 3's works, and does not allow him or her (try as they might) to wriggle out on a technicality.  Indeed, not only do these "arguments" not constitute a valid basis to quash the subpoena, they provide an opportunity for Strike 3 to show the Court that it is, in fact, completely in the right.

Defendant correctly notes that this lawsuit is "the latest installment" of copyright infringement cases that Strike 3 has been forced to file in order to combat the rampant and wide-scale infringement of its works.  As one court aptly observed, filing a "very large number of infringement suits" is exactly "what the holders of intellectual property rights do when they are faced with mass infringement." *Malibu Media, LLC v. Doe*, No. 13-3648, 2014 WL 2581168 (N.D. Ill. June 9, 2014). Indeed, Strike 3 does not even have the option of filing a single lawsuit against multiple defendants – it is required to name individual defendants in individual suits,[3] which it does even in the face of criticisms that it is "flooding" the courts with

---

[3] Courts in New Jersey routinely quash subpoenas in BitTorrent copyright infringement matters where multiple defendants are improperly joined in a single action, but allow the subpoena as to the *first* John Doe defendant to stand; these decisions are of no use to Defendant here because he or she is not "John Doe No. 2" or "John Doe No. 99" – they are the *only* defendant in this matter. *See, e.g.*, *Malibu Media, LLC v. John Does 1-18*, No. 12-07789, 2014 WL 229295 (D.N.J. Jan. 21, 2014); *Malibu Media, LLC v. Surgent*, No. 12-3905, 2013 WL 1704289, (D.N.J. Apr. 19, 2013); *Malibu Media, LLC v. John Does 1-22*, No. 12-5091, 2013 WL 1704291 (D.N.J. Apr. 19, 2013); *Malibu Media, LLC v. John Does 1-19*, No. 12-

lawsuits.  The fact that some courts and commentators take issue with the quantity of lawsuits filed is not evidence of improper conduct by Strike 3, or that it is not entitled to defend its copyrights, but rather demonstrates the immense challenge Strike 3 faces in stopping Defendant and his or her ilk from stealing the hard work of its actors, actresses, directors, producers, and other employees.

Rather than attack Strike 3 directly – because he or she cannot – Defendant spends much of their motion unfairly discussing what *other* plaintiffs have done, in the hope that the Court will lump Strike 3 in with them.  To this end, Defendant asserts that "a plaintiff *may*" engage in improper conduct – including "commenc[ing] a series of harassing calls and/or letters to" Defendant or their family, shaming Defendant, and even conspiring to commit extortion**,** [ECF No. 6-3 p 3-4] (emphasis added) – because other litigants in other matters have been accused of similar improper conduct.  However, Defendant has made the mistake of stealing the works of *Strike 3*, not those other entities.  Defendant cannot point to a single instance of Strike 3 engaging in improper conduct – because Strike 3 never

---

06945, ECF No. 23 (D.N.J. Mar 28, 2013); *Modern Woman, LLC v. Does 1-X*, Dkt. No. 12-4860, ECF No. 6 (D.N.J. Feb. 27, 2013); *Modern Woman, LLC v. Does 1-X*, Dkt. No. 12- 4858, ECF No. 6 (D.N.J. Feb. 27, 2013); *Malibu Media, LLC v. John Does 1-11*, Dkt. No. 12-cv-07615, ECF No. 8 (D.N.J. Feb. 26, 2013); *Modern Woman, LLC v. Does 1-X*, Dkt. No. 12-4859, ECF No. 6 (D.N.J. Feb. 26, 2013); *Patrick Collins, Inc. v. Does 1-43*, No. 12-3908, 2013 WL 12170608 (D.N.J. Feb. 15, 2013).

has and never will.  Indeed, courts around the country – and in the District of New Jersey – have specifically recognized that Strike 3 has nothing in common with these other past bad actors and that these litigations are proper.[4]

Strike 3 is also not what has been nebulously labeled a "copyright troll."  *See Strike 3 Holdings, LLC v. Doe*, No. 18-03763, ECF 12, at *1 (N.Y.E.D. Nov. 14, 2018) (finding that analogizing to other litigants' conduct is not "specific to this case

---

[4] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 at *6 (Goodman, J.) (Atkin Cert. ¶ 4, Ex. C) ("Doe contends that Strike 3 uses an abusive business model that the Court should not endorse. On the record before the Court, however, the undersigned cannot find that Strike 3's practices constitute such an abuse."); *Strike 3 Holdings, LLC v. Doe*, No. 18-1490, 2019 WL 1529339 at *5 (W.D.N.Y. Apr. 8, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-5223, 2019 WL 1429331, at *2 (E.D. Pa. Mar. 29, 2019) ("There is nothing before us at this time to suggest that Strike 3 is doing anything other than taking the proper steps to enforce what it deems to be valid copyrights."); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 257 (W.D.N.Y. 2018) (denying motion to quash and finding "there is no evidence to support Defendant's conclusory claims that Plaintiff is engaging in copyright troll litigation tactics in the instant lawsuit" because "Plaintiff is ready and willing to litigate the cases it files . . . [and] there is no evidence that Plaintiff has engaged in any of the abusive practices used by similar plaintiff's, such as exploiting Defendant's identifying information as leverage for settlement, or filing one lawsuit against numerous John Does as a way to circumvent filing fees[.]") (citations omitted); *Strike 3 Holdings, LLC v. Doe*, No. 18-1762, ECF No. 12 at *1 n.1 (E.D. Pa. Oct. 2, 2018) ("Doe's unsupported assertion that Strike would use Doe's personal information to coerce settlement is also insufficient to quash Strike's subpoena as an undue burden."); *Strike 3 Holdings, LLC v. Doe*, No. 18-02019, ECF No. 29 at *5-6 (N.D. Cal. Sep. 14, 2018) (denying motion to quash and noting that Strike 3's "conduct in this case and the dozens of similar cases it has filed in this District suggest that the unsavory tactics of earlier copyright litigants discussed in the cases cited by Defendant are unlikely to come to fruition here. . . . Thus, in contrast to parties that might simply file lawsuits to encourage defendants to settle, Plaintiff appears to be following through with litigation.").

[and] there is nothing in the record to suggest that improper conduct has been engaged in by this Plaintiff against this Defendant").  Although there is no precise or agreed-upon definition of what constitutes a "copyright troll," concerns tend to revolve around two issues: (1) whether the litigation actually benefits the creator rather than some third-party, *see, e.g.*, *Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013); and (2) whether the litigation is the party's primary source of income. *See, e.g.*, Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 IOWA L. REV. 1105, 1108 (2015) (defining a "copyright troll" loosely as a party that is "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service").[5]  Neither of these concerns is at play here.

---

[5] This definition, either freestanding or as a cluster of attributes, has been criticized.

> Litigation as a revenue stream independent of any content creation thus seems to lie at the heart of Sag's problems with copyright litigation that he regards as trolling, an idea not adequately captured by his other criteria. This idea goes back to the assumption, then, that litigation is an avoidable evil in the copyright system. Yet, this idea is precisely what makes the case against copyright trolls hard to make and maintain. * * *
> While Sag may have strong intuitions about the viability of the argument, it would be well if he spelled out his arguments more clearly.

Shyamkrishna Balganesh & Jonah B. Gelbach, *Debunking the Myth of the Copyright Troll Apocalypse*, 101 IOWA L.REV. BULL. 43, 48–49 (2015–2016) (suggesting what qualifies a party as a "copyright troll" is its conduct in litigation and not its "status" as a litigant).

First, Strike 3 is not just the creator of the works-in-suit; it continues to create new motion pictures.  *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 780–81 (E.D. Pa. 2013) ("[Plaintiff] is not what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll'—i.e., a non-producer who merely has acquired the right to bring lawsuits against alleged infringers.  Rather, [Plaintiff] *is an actual producer of adult films* and owns valid copyrights, registered with the United States Copyright Office, in its works.") (emphasis supplied).  "Proceeds that Strike 3 receives from settlements go back into making the company whole, including investing in better pay for artists and performers, better quality productions, and hiring and providing benefits for employees."  [ECF No 4-1, at 5] (citing Decl. of Greg Lansky (at ¶ 32).  This is the very purpose of copyright law: "To promote the progress of" creative works.  U.S. CONST. Art. 1, § 8, cl. 8; *see Fogerty v. Fantasy*, Inc., 510 U.S. 517, 526–27 (1994) ("The immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor.") (quoting *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156 (1975)).  Strike 3's motion pictures support an expanding workforce of nearly seventy-five employees, including editors and producers, all contributing to the creative marketplace.  *See* [ECF No. 4-2, at ¶ 14].

Second, Strike 3 "makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses," and not from litigation.  *See id.* at ¶ 32.  Strike 3's litigation is

not a primary source of revenue, but a way to compensate sales lost to piracy and to redirect infringers and potential infringers to the legitimate marketplace.  When violations of a party's rights are – as here – widespread, and infringers numerous, it is reasonable that Strike 3 would enforce its copyrights against the most egregious offenders.  *See Malibu Media, LLC v. Doe*, No. 13-3648, 2014 WL 2581168 (N.D. Ill. June 9, 2014).  That defendants tend to settle has no bearing on Strike 3's conduct.  *See e.g.*, *Malibu Media, LLC v. Doe*, No. 15-4381, 2015 WL 4923114 at *1 n.4 (S.D.N.Y. Aug. 18, 2015) ("[T]here are any number of reasons free from coercion that a defendant may choose to settle, including culpability.").  Simply put, "[b]ecause there is no evidence to support Defendant's conclusory claims that Plaintiff is engaging in copyright troll litigation tactics in the instant lawsuit, . . . the Court [should] den[y] Defendant's motion to quash on these grounds."  *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 257 (W.D.N.Y. 2018).

## IV.   PLAINTIFF HAS ESTABLISHED THIS COURT'S JURISDICTION OVER DEFENDANT

Personal jurisdiction and venue in copyright litigation depend on the location of the infringer.  *See* 28 U.S.C. § 1400(a); *Strike 3 Holdings, LLC v. Doe*, No. 18-47, 2018 WL 1427002, at *5 (S.D. Cal. Mar. 22, 2018); *Vasquez v. Torres Negron*, 434 F. Supp. 2d 199, 202 (S.D.N.Y. 2006); *Ed. Testing Serv. v. Katzman*, 631 F. Supp. 550, 565 (D.N.J. 1986) ("[I]t is established law in this circuit that venue is proper in a copyright case wherever the court may properly assert jurisdiction over

16

the defendant.").  The initial burden to establish personal jurisdiction rests on Strike

3 as the plaintiff. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). "A

prima facie showing of personal jurisdiction requires that [a plaintiff] establish with

reasonable particularity sufficient contacts between the defendant and the forum

state." *Doe v. Chiquita Brands Int'l, Inc.*, No. 07-3406, 2018 WL 497322, at *3

(D.N.J. Jan. 19, 2018) (citation and internal punctuation omitted); *accord Provident

Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987) (citing

*Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3rd Cir. 1985)).

Since at this stage the defendant is anonymous and identifiable only through

his or her IP address, to meet this burden Strike 3 uses Maxmind, Inc.'s ("Maxmind")

geolocation service to determine (1) in which court's jurisdiction the Defendant

resides and (2) which ISP assigned the subscriber the IP address, that is, the entity

that Strike 3 should request leave to serve a subpoena upon.  It is well-established

that "geolocation services may be used to estimate the location of Internet users

based on their IP addresses." *Strike 3 Holdings, LLC v. Doe*, 325 F.R.D. 499, 503

(D.D.C. 2018) (internal quotations and citations omitted).  "A showing that the

internet account associated with an IP address that allegedly engaged in infringing

activity is located in [the district] is sufficient to establish prima facie personal

jurisdiction over the alleged infringer." *DigiProtect USA Corp. v. Does*, No. 10-

8760, 2011 WL 4444666, at *3 (S.D.N.Y. Sept. 26, 2011).  As other courts have

observed, although these services are not "100% accurate," they provide "a good faith basis to believe a putative defendant may be [a district] resident if a geolocation service places his/her IP address within the [district.]" *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40 (D.D.C. 2011).

Maxmind is "an industry-leading provider of IP address intelligence and online fraud detection tools."[6] [ECF No. 1, at ¶ 9].  As a result, federal courts around the country have found that tracing an IP address through Maxmind's geolocation database, like here, establishes a *prima facie* case of personal jurisdiction and venue. *See, e.g.*, *Spanski Enterprises, Inc. v. Telewizja Polska S.A.*, 222 F. Supp. 3d 95, 106 (D.D.C. 2016), *as amended* (Dec. 12, 2016), *aff'd*, 883 F.3d 904 (D.C. Cir. 2018); *Criminal Prods., Inc. v. Doe*, No. 16-2589, 2016 WL 6822186, at *3 (S.D. Cal. Nov. 18, 2016); *SBO Pictures, Inc. v. Does 1-20*, No. 12-3925, 2012 WL 2304253, at *1 n.10 (S.D.N.Y. June 18, 2012).  Indeed, federal law enforcement agencies routinely rely on Maxmind for their cyber investigations.  *See, e.g., United States v. Richardson*, No. 11-3116, 2012 WL 10382, at *2 (D. Neb. Jan. 3, 2012) (Federal Bureau of Investigation), *report and recommendation adopted*, No. 11-3116, 2012 WL 395509 (D. Neb. Feb. 7, 2012); *United States v. Tillotson*, No. 08-33, 2008 WL 5140773, at *6 (E.D. Tenn. Dec. 2, 2008) (Department of Justice).  According to

---

[6] *See also* https://www.maxmind.com/en/company.

Maxmind, its geolocation traces are "99.8% accurate on a country level, 90% accurate on a state level in the US, and 86% accurate for cities in the US within a 50 kilometer radius."[7]

Defendant spuriously claims that "[q]uestions exist" as to whether reliance on Maxmind can satisfy Plaintiff's *prima facie* burden, but that is not true.  In fact, just this month Judge Waldor denied a motion to quash – based on an *identical* brief with *identical* arguments – holding:

> The Court is unpersuaded. Courts have recognized geolocation services as a method of estimating the location of Defendant based on IP addresses for the purposes of jurisdictional discovery. *See Strike 3 Holdings, LLC v. Doe,* 324 F.R.D. 499, 503 (D.D.C. 2018). Thus, the Court finds there to be sufficient good faith basis behind Plaintiff's attempts to locate Defendant for purposes of jurisdiction and venue and decline to quash the subpoena on those grounds.

*Strike 3 Holdings, LLC v. Doe*, No. 18-10619, ECF No. 42 at *1 (Atkin Cert. ¶ 2, Ex. A).

Defendant also misleadingly cites to four unpublished decisions from California – from 2016 – to claim that two judges in the Southern District of

---

[7] *See* https://support.maxmind.com/geoip-faq/geoip2-and-geoip-legacy-databases/how-accurate-are-your-geoip2-and-geoip-legacy-databases/ (last visited July 16, 2019).

California[8] and one in the Northern District of California,[9] have granted motions to quash based on "concerns with the accuracy of the plaintiff's geolocation methods." [ECF No. 6-3 at 21]. However, like much of Defendant's brief, this only tells half the story (if that). Judge Alsup did not quash the subpoena in the Northern District of California matter, he *stayed* it so that additional evidence could be submitted (after which the case apparently settled). *See Malibu Media LLC v. Doe*, No. 16-01996, ECF No. 13 p.1 ("[T]his order STAYS compliance with the subpoena pending submission of certain sworn evidence."). Similarly, someone should tell Judge Brooks and Judge Dembin of the new trend they purportedly started in 2016, since both judges have *granted* Strike 3's motions to conduct early discovery in more recent cases.[10] To the extent Judge Dembin (and Judge Alsup) required an additional

---

[8] *Malibu Media, LLC, v. Doe*, No. 3:15-02931 (ECF No. 6) (S.D. Cal. March 17, 2016) (Brooks, J.); *Malibu Media, LLC, v. Doe*, No. 3:15-02933 (ECF No. 5) (S.D. Cal. Feb. 17, 2016) (Dembin, J.); *Malibu Media, LLC, v. Doe*, No. 3:15-02919 (ECF No. 6) (S.D. Cal. Feb. 17, 2016) (Dembin, J.).

[9] *Malibu Media LLC v. Doe*, No. 16-01996, ECF No. 13 (N.D. Cal. June 20, 2016) (Alsup, J.).

[10] *See Strike 3 Holdings, LLC v. Doe*, No. 19-75, ECF No. 7 (S.D. Cal. Mar. 8, 2019) (Brooks, J.); *Strike 3 Holdings, LLC v. Doe*, No. 19-74, 2019 WL 1077548, ECF No. 7 (S.D. Cal. Mar. 7, 2019) (Brooks, J.); *Strike 3 Holdings, LLC v. Doe*, No. 18-2719, ECF No. 9 (S.D. Cal. Mar. 6, 2019) (Dembin, J.); *Strike 3 Holdings, LLC v. Doe*, No. 18-2716, ECF No. 8 (S.D. Cal. Mar. 6, 2019) (Dembin, J.); *Strike 3 Holdings, LLC v. Doe*, No. 19-80, ECF No. 7 (S.D. Cal. Mar. 6, 2019) (Dembin, J.); *Strike 3 Strike 3 Holdings, LLC v. Doe*, No. 18-47, 2018 WL 1427002, ECF No. 7 (S.D. Cal. Mar. 22, 2018) (Brooks, J.); *Strike 3 Holdings, LLC v. Doe*, No. 18-989, ECF No. 5 (S.D. Cal. July 5, 2018) (Dembin, J.).

declaration explaining how Strike 3's geolocation service works and was utilized in this case, and this Court wishes to review the same information, a declaration from Ms. Emilie Kennedy is attached hereto.  *See* Atkin Cert. ¶ 5, Ex. D.

In that same vein, Defendant inexplicably raises a decision from the District of Columbia, denying Strike 3 leave to serve a subpoena, as a basis to support their argument attacking Strike 3's reliance on Maxmind to make its *prima facie* showing of personal jurisdiction.  *See Strike 3 Holdings, LLC, v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018) (Lamberth, J.), *appeal filed*, No. 18-7188 (D.C. Cir. Feb. 21, 2019) ("D.C. Opinion").  However, nothing in that decision took issue with Strike 3's reliance on Maxmind to make a *prima facie* showing of personal jurisdiction and venue – indeed, the court specifically found that by relying on Maxmind "Strike 3 clears that hurdle." *Id.* at 162.

Instead, the D.C. Opinion's error was holding that Strike 3's yet-to-be-filed-amended complaint could *never* withstand a Rule 12(b)(6) motion with only the ISP's response of the name and address of the subscriber. *Id.* at 164.  That decision, of course, ignores the follow-up investigation that Strike 3 is required to conduct once it receives the ISP's response (using public information, rather than discovery tools) to determine whether a good faith basis (still) exists to proceed against the

subscriber or another person prior to filing the amended complaint.[11]   And that court's prediction – that Strike 3's complaints could never survive a Rule 12(b)(6) motion – has been repeatedly proven wrong:  Strike 3 has prevailed on *every* Rule 12(b)(6) motion filed to date.  *See Strike 3 Holdings, LLC v. Doe*, No. 18-14060, ECF No. 14 (E.D. Mich. May 31, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-6488, ECF No. 24 (N.D. Ill. April 4, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-1874, ECF No. 17 (D. Md. Oct. 26, 2018).

And, of course, when discussing the D.C. Opinion, it is important to note that it has not only been appealed, but has also been expressly and explicitly rejected by so many courts[12] that one court, when denying a motion to quash, recently described it as "heavily criticized and rarely followed."  *Strike 3 Holdings, LLC v. Doe*, No. 19-723, 2019 WL 2996428, at *2 (N.D. Cal. July 9, 2019) (citations omitted).  In

---

[11] *See, e.g.*, *Malibu Media v. Rahuse*, No. 14-6976, 2015 WL 2231853, at *4 (D.N.J. May 11, 2015) (denying motion to dismiss and holding that "by alleging that Plaintiff conducted an investigation and discovered that Defendant's publicly available social media profile contains images that match the types of third party works that Plaintiff's investigator detected being infringed, Plaintiff has sufficiently connected Defendant personally with evidence of BitTorrent use traced to the subject IP address and residence assigned that IP address, where Defendant lived").

[12] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-2211, 2019 WL 1778054 (D.D.C. Apr. 23, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-01490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-5223, 2019 WL 1429331 (E.D. Pa. Mar. 29, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-02637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-5238, ECF No. 10 (E.D. Pa. Feb. 11, 2019).

full candor to the tribunal, I note that two decisions exist that have "followed" the

D.C. Opinion, albeit in matters that are distinguishable from the present case.[13]

It is also troubling that Defendant's moving brief cites to four *pending* Orders

to Show Cause ("OSC"), all issued by Judge Schneider, to support the assertion that

---

[13] First, after denying Strike 3's motion for leave to serve early discovery, without prejudice, a magistrate judge in the District of Columbia issued an OSC as to whether she should follow the D.C. Opinion, and subsequently rejected Strike 3's response as "essentially an objection" to it, which the court held it "simply cannot reconsider." *Strike 3 Holdings, LLC v. Doe*, No. 18-01896, 2019 WL 2188763, at *1 (D.D.C. Mar. 27, 2019). Although magistrate judges are not, in fact, bound by the decisions of district court judges issued in other matters, *see Abreu v. Verizon of New York, Inc.*, No. 15-58, 2018 WL 1401326 (E.D.N.Y. Mar. 20, 2018), any procedural concerns the magistrate judge may have felt prevented her from "reconsider[ing]" the in-district decision are obviously not present in this District of New Jersey matter before Your Honor.

Second, Judge Vasquez recently cited approvingly to the D.C. Opinion in a decision in which he denied a motion for default judgment, without prejudice, in a non-Strike 3 BitTorrent copyright infringement matter. *Malibu Media v. Park*, Dkt. No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019). Unlike the motion to quash before the Court, the issue in *Park* was whether the Court should grant default judgment on an *amended* complaint (served after the subpoena response was received and a follow-up investigation conducted) that alleged nothing beyond the fact that the defendant was also the subscriber. *See* Dkt. No. 17-12107 [ECF No. 8]. Strike 3 agrees that such an amended complaint is deficient. *See infra* Sec. VI. This matter is clearly distinguishable because it is still at the "John Doe" complaint stage, and Strike 3 was granted early discovery so that it can conduct its follow-up investigation (using public resources) to file an amended complaint that contains the information Judge Vasquez found lacking in *Park*. Indeed, in contrast to *Park*, Strike 3 has successfully obtained a default judgment in the District of New Jersey precisely because its amended complaints contain allegations connecting the defendant as the infringer beyond merely being the subscriber assigned the IP address. *See,.e.g.*, *Strike 3 Holdings, LLC v. Olenick*, Dkt. No. 18-12605, ECF No. 17 (D.N.J. May 14, 2019) (order granting default judgment).

"four (4) District of New Jersey cases ha[ve] since adopted Judge Lamberth's findings and reasoning . . . ." ECF No. 6-3 p.24. At best, this demonstrates a lack of understanding of what an OSC is – an order asking a party to show cause whether the court *should* or *should not* do something; at worst, it is a deliberate attempt to mislead the Court into believing that the D.C. Opinion has been adopted by courts in this District to quash subpoenas or deny requests for leave to conduct early discovery. That is not true. Judge Schneider's OSCs are still pending as of the date of this brief. And even if Judge Schneider breaks with the growing trend and decides to follow the D.C. Opinion, that decision (1) would not be binding on this Court and (2) would represent a "split" of authority within this District, since Judge Waldor issued similar OSCs concerning the D.C. Opinion that have all been discharged. *See Strike 3 Holdings, LLC v. Doe*, No. 18-14134, ECF No. 12 (D.N.J. Mar. 15, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-14124, ECF No. 12 (D.N.J. Mar. 15, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-10619, ECF No. 28 (D.N.J. Mar. 15, 2019).

Here, Plaintiff has clearly demonstrated a good faith basis for asserting personal jurisdiction (and venue) based on its reliance on well-established geolocation tracking software, which is relied upon law enforcement agencies and recognized as accurate by numerous courts. And Defendant has submitted *no* evidence, despite clearly having it readily at hand, to rebut Strike 3's *prima facie* showing of jurisdiction and venue. *See R.Q.C. Ltd. v. JKM Enterprises, Inc.*, No.

13-307, 2014 WL 4792148, at *7 (W.D. Pa. Sept. 23, 2014) (finding that because defendant failed to "supply any evidence" rebutting plaintiff's assertion of personal jurisdiction over defendant, that the court "may properly exercise specific personal jurisdiction over [defendant] at this stage in the proceedings"); *Simons v. Arcan, Inc*., No. 12-1493, 2013 WL 1285489, at *6 (E.D. Pa. Mar. 28, 2013) (requiring defendant to provide an affidavit or some sort of evidence to rebut the plaintiff's personal jurisdiction assertions).  Defendant ought to be able to easily rebut Strike 3's *prima facie* showing:  he or she could provide the ISP's letter, already attached as an exhibit to their motion, [ECF No. 6-2, p. 2], with the city and state address (but not their name and street address) unredacted.  Yet Defendant chose to deliberately hide this information from the Court, strongly suggesting that Maxmind *did* accurately locate them within this Court's jurisdiction.

## V.   PLAINTIFF'S RIGHT TO CONTINUE WITH ITS LITIGATION OUTWEIGHS DEFENDANT'S MINIMAL PRIVACY INTERESTS AND THE SUBPOENA IMPOSES NO BURDEN ON DEFENDANT

Defendant also argues the subpoena should be quashed because (1) they have a privacy interest in maintaining their confidentiality and (2) it imposes an undue burden on them.  Neither argument is correct.

As a preliminary matter, Strike 3 agrees Defendant has standing to challenge the subpoena generally.  *See Strike 3 Holdings, LLC v. Doe*, No. 18-10619, ECF No. 42 at *2 (D.N.J. July 1, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF

No. 16 at *4 (D.N.J. June 27, 2019).  However, as Judge Waldor recently recognized, there is simply "no privileged or protected material at issue here." *Strike 3 Holdings*, No. 18-10619-KM-CLW, ECF No. 42 at *3 (Atkin Cert. ¶ 2, Ex. A).  And the Minnesota case law that Defendant cites to in support of their argument that their "privacy interest" is a sufficient basis to quash, *see* [ECF 6-3 p. 6], has been thoroughly rejected by Judge Goodman.  *See Strike 3 Holdings, LLC v. Doe*, No. 18-14138, ECF No. 15 at *1–2 (Atkin Cert. ¶ 3, Ex. B); *see also Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 256 (W.D.N.Y. 2018) ("[T]he overwhelming majority of opinions in similar cases, including those from the District of Minnesota, have granted leave to serve a third-party subpoena pursuant to 47 U.S.C. § 551(c)(2)(B), so the decision relied on by Defendant has carried little weight even within its own district.").

"Fed. R. Civ. P. 45(c)(3)(A)(iii) [only] requires a court to quash a subpoena if the subpoena seeks 'disclosure of privileged or other protected matter, if no exception or waiver applies.'" *Patrick Collins, Inc.*, 2013 WL 3466833 at *2.  And, "the burden rests squarely on the Defendant, as the moving party, to demonstrate that a privilege exists and that the subpoena would disclose such information." *Malibu Media, LLC v. John Does 1-18*, No. 12-07789, 2014 WL 229295, at *7 (D.N.J. Jan. 21, 2014) (citation omitted).

However, "[c]ourts have consistently ruled that 'Internet subscribers do not have a reasonable expectation of privacy in their subscriber information.'" *Id.* (citing *Sony Music Entm't v. Does 1-40,* 326 F. Supp. 2d 556, at 566-67 (S.D.N.Y. 2004); *see also Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. Kg. v. Does 1-4, 577,* 736 F. Supp. 2d 212, 216 (D.D.C. 2010)).  Indeed, as one court in this District has already noted of this *same* boilerplate Motion, "Defendant's case law does not even directly support Defendant's position. In [*Third Degree Films, Inc. v. Does 1-108*, No. 11-3007, 2012 WL 669055 (D. Md. Feb. 28, 2012)]*,* the Court found that other courts have consistently ruled that Defendants, as internet subscribers, do not have a reasonable expectation of privacy in their subscriber information." *Patrick Collins, Inc. v. John Does 1-13*, No. 12-7620, 2013 WL 3466833, at *3 (D.N.J. July 10, 2013) (internal citations omitted).  *Cf.* [ECF No. 6-3, at 21] (citing *Third Degree Films*).  "This is because '[I]nternet subscribers have already voluntarily conveyed their subscriber information—name, address, and phone number to their [I]nternet [S]ervice [P]rovider.'" *Patrick Collins, Inc.*, 2013 WL 3466833, at *3 (citations omitted).

Simply put, in this case, "*[Defendant]* has voluntarily disclosed his personal information to his service provider . . . in order to set up his Internet account. Accordingly, [Defendant] cannot now claim that such information is so confidential

27

as to establish a basis for quashing a subpoena." *Malibu Media, LLC*, 2014 WL 229295, at *7 (citations omitted).

Defendant's undue burden argument fares no better. *See Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 at *4 (Atkin Cert. ¶ 4, Ex. C). "An undue burden exists when 'the subpoena is 'unreasonable or oppressive.'" *Patrick Collins, Inc.*, 2013 WL 3466833, at *3 (quoting *In re Lazaridis,* No. 10-29, 2011 WL 3859919, at *2 (D.N.J. Sept.1, 2011)).

> Courts consider several factors to determine the reasonableness of the subpoena including; the party's need for production, the nature and importance of the litigation, the relevance of the material, the breadth of the request for production, the time period covered by the request, the particularity with which the documents are described, and the burden imposed on the subpoenaed party.

*Patrick Collins, Inc.*, 2013 WL 3466833 at *3 (citations omitted).   None of these factors weigh in favor of quashing the subpoena here.

While Defendant has standing (in general) to challenge the subpoena, "[a] party does not generally have standing to challenge third party subpoena based on undue burden because the subpoena is directed at the ISP and not the Defendant." *Id.* (citations omitted).  In this case, "because the subpoena is directed to a third party, [Defendant] cannot establish that it imposes an undue burden upon him." *Malibu Media, LLC*, 2014 WL 229295, at *7.  Defendant falsely equates his or her standing to protect their privacy interest in "protected information" with the ability

to assert an "undue burden."  The subpoena places *no* burden on Defendant – this alone is reason to reject this argument.[14]

The Court should also reject Defendant's creative argument that the "burden" the Court should consider is the risk of reputational injury Defendant may suffer if it becomes publicly known that they are accused of stealing pornography, or that they might feel pressure to settle this litigation to prevent that from occurring.  *Cf. Malibu Media, LLC v. Doe*, No. 15-4381, 2015 WL 4923114 at *1 n.4 (S.D.N.Y. Aug. 18, 2015) ("[T]here are any number of reasons free from coercion that a defendant may choose to settle, including culpability.").   However, there is absolutely no evidence that Strike 3 has ever engaged in coercive settlement practices, and there never will be.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-1762, ECF No. 12 at *1 n.1 (E.D. Pa. Oct. 2, 2018) ("Doe's unsupported assertion that Strike would use Doe's personal information to coerce settlement is also insufficient to quash Strike's subpoena as an undue burden.").  Indeed, every Court to consider this baseless argument has recognized that Strike 3 has nothing in common with bad actors in past BitTorrent copyright infringement litigations.  *See supra* Sec. III; *see also See Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018) ("[I]ndividual cases . . . deserve to be judged on their own

---

[14] Tellingly, Defendant's ISP – the entity that *is* burdened by the subpoena – has not joined in the motion to quash or made any arguments that the burden on it is "undue."

merits and not saddled with a blanket indictment against peer-to-peer copyright litigation[.]'").

Nor is there any merit to Plaintiff's reputational concerns, since Strike 3 has consented to (and even suggested) the entry of a protective order allowing Defendant to proceed pseudonymously, as it does in all cases. *See infra* Sec. VII; *see also* [ECF No. 4 at p. 13]. Moreover, Defendant's "broad claim of reputational injury fails to demonstrate a 'clearly defined and serious injury.'" *Malibu Media, LLC*, 2014 WL 229295 at *8. While courts have acknowledged that "there is some social stigma attached to consuming pornography . . . it is [nonetheless] the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove." *Id.* (citation omitted). Importantly, "[w]ithout Defendant's identity, Plaintiff is unable to enforce its rights against online infringement," and, therefore, the Court should find "that the [s]ubpoena is not unreasonable or oppressive and thus does not impose an undue burden." *Patrick Collins, Inc.*, 2013 WL 3466833, at *4 (citations omitted).

In sum, Defendant has plainly failed to meet the standard to quash the subpoena based on the asserted grounds because the subpoena (1) does not seek privileged or protected information and (2) does not impose an undue burden on Defendant.

## VI. STRIKE 3 HAS ADEQUATELY PLED A CAUSE OF ACTION FOR INFRINGEMENT, AND THE SUBPOENA WILL ENABLE STRIKE 3 TO CONNECT DEFENDANT WITH THE INFRINGEMENT OF STRIKE 3'S WORKS.

Defendant also argues that the subpoena – a discovery request necessary to assist Strike 3 in determining whether the subscriber (or someone in their household) should be identified as the infringer in an amended complaint – should be quashed based on the Ninth Circuit's decision in *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018).  But Defendant must be hoping the Court does not actually read that case or any of the case law interpreting it.  *Cobbler Nevada* concerned the pleading standard for a plaintiff *after receiving the identity of the defendant* in a copyright BitTorrent action, *i.e.*, the *amended* complaint stage.  Courts across the country have recognized that *Cobbler Nevada* does <u>not</u> stand for the proposition that copyright holders should be denied the ability to conduct early discovery to attempt to identify an infringer and file an amended complaint, as Defendant requests here.

In *Cobbler Nevada,* the Ninth Circuit held that a plaintiff in a BitTorrent copyright infringement action was required to pay attorneys' fees to a prevailing defendant because the plaintiff did not act in an objectively reasonable way when it *continued* to pursue an amended complaint against a defendant where "[t]he only connection between [the defendant] and the infringement was that he was the registered internet subscriber and that he was sent infringement notices."  901 F.3d at 1147.  Importantly, the Ninth Circuit noted in its ruling that the plaintiff there had

31

actually "acknowledged that its independent investigation did not permit identification of 'a specific party that is likely to be the infringer.'" *See id*.   Thus, the Ninth Circuit reached this conclusion *after* the district court permitted the plaintiff to subpoena the ISP for the defendant's identifying information, conduct an initial investigation into the defendant, and even depose defendant. *See id.*  Just a few weeks prior to releasing the *Cobbler Nevada* decision, the Ninth Circuit ruled in a similar case that "allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity[,]" along with permitting a plaintiff to depose the defendant early in the litigation was  "practical" and "sensible."  *Glacier Films (USA), Inc.*, 896 F.3d at 1036, 1038.

Indeed, in *Cobbler Nevada*, the Ninth Circuit recognized that early discovery, such as what Plaintiff is seeking (and was granted) here, is "part of the puzzle" in determining the identity of the infringer and thus such early discovery is wholly appropriate.  *Cobbler Nevada*, 901 F.3d at 1145.  Thus, the District Court in *Cobbler Nevada allowed* the subpoena to be issued to the ISP, the ISP to respond, and the subscriber to be identified.  It was only after the subscriber was identified, and it became clear – in that case – that neither that information nor any other information linked the defendant to the infringement that the court found it was improper for the plaintiff to *continue* to pursue claims against the subscriber.  That is the reason the Ninth Circuit in *Cobbler Nevada* used the words "standing alone" – confirming that

32

a plaintiff in a BitTorrent infringement case gets to *at least* identify the subscriber and then conduct an investigation to determine if they should be identified as the infringer on an amended complaint.  If that identity "standing alone" does not support the assertion that the subscriber is the infringer – if follow-up investigation does not bear fruit or points elsewhere, then it may not be proper to proceed with a case against the subscriber.[15]  *But the plaintiff gets to start with that information.* And the only way to get that information is through the subpoena sought to be quashed by this motion.

As the Northern District of California recently explained, *Cobbler Nevada* does not support granting a motion to quash – it supports *denying* such motions:

> Although the Ninth Circuit affirmed dismissal in *Cobbler Nevada*, it did not suggest that the district court erred in allowing the plaintiff to take early discovery, including not only a subpoena served on an ISP, but also a deposition of the subscriber to whom the IP address was registered.  District courts examining that decision have held that although an IP address and a subscriber's name alone may be insufficient to state a claim of infringement, *Cobbler Nevada* does not stand for the proposition that subpoenas may not be used to determine a subscriber's name.  While it may turn out to be the case, as in *Cobbler Nevada*, that the IP address is insufficient to identify the infringer, circumstances might also differ: the subscriber here might live alone and maintain exclusive access to the IP address, or might admit to infringing if asked, or might be able to identify some other person as the infringer. At this stage, the Court need not resolve the minimum

---

[15] This Court's *own* Order permitting early discovery even recognized this as the applicable law.  *See* [ECF No. 5 at p. 5, n.2] ("By permitting this discovery, the Court does not find or suggest that Plaintiff may rely solely on the subscriber's affiliation with the IP address in question as the basis for its claims or its identification of the specific individual as the Defendant.").

connections necessary on a motion to dismiss or at summary judgment to support an inference that a particular individual associated with an IP address used that IP address to infringe Strike 3's copyrights, or whether any further pre-service discovery beyond the subpoena might be warranted and permissible. The Court holds only that it is not so clear that discovery would not uncover the identit[y] of the purported infringer that Strike 3's subpoena should be disallowed as futile.

*Strike 3 Holdings, LLC v. Doe*, No. 19-723, 2019 WL 2996428, at \*3 (N.D. Cal.

July 9, 2019) (citations and internal quotation marks omitted).

This case is *not* at the amended complaint stage yet, and the Court should reject Defendant's nonsensical invitation to judge it by standards applicable to amended complaints filed *after* an ISP responds to a subpoena (and a follow-up investigation is conducted) so as to deprive Strike 3 of a response to its ISP subpoena in the first place. Strike 3 has filed suit against Defendant as a "John Doe" in order to request leave to obtain the subpoena on the ISP at issue here, so that it can complete its investigation to determine whether to proceed against the subscriber (or someone else in their household). And the Court should reject Defendant's protestations that they are just the subscriber and not the "alleged offender," because

courts in New Jersey[16] and elsewhere[17] are in accord that, before early discovery can be conducted, it is "plausible" to allege that the subscriber is the infringer.  Indeed, as this Court has recognized, "if any defendant could quash a subpoena based on the mere possibility that someone else has used the defendant subscriber's IP address to perpetuate the alleged infringement then a plaintiff would be unable to enforce its rights." *Malibu Media, LLC v. Doe*, No. 16-1739, 2017 WL 1050573, at *2 (D.N.J. Mar. 20, 2017) (internal brackets and quotations omitted); *see also Strike 3*

---

[16] *See Malibu Media, LLC v. Doe 24.0.91.59*, No. 16-1739, 2017 WL 1050573, at *2 (D.N.J. Mar. 20, 2017) (Martini, J.) (denying Rule 12(b)(6) motion in BitTorrent copyright infringement matter because "[i]t is plausible that files downloaded using a particular IP address were downloaded by the subscriber of that address."); *Fonovisa, Inc. v. Does 1–9*, 2008 WL 919701, at *3 (D.N.J. Apr. 3, 2008) (Lenihan, J.); *see also Malibu Media, LLC v. Tsanko*, No. 12-3899, 2013 WL 6230482, at *10 (D.N.J. Nov. 30, 2013) (Shipp, J.) (deferring on ruling on Rule 12(b)(6) motion and requesting the parties to brief plausibility issue, which subsequently was voluntarily dismissed).

[17] *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 15-3185, 2016 WL 4773127, at *2 (D. Md. Sept. 13, 2016); *Malibu Media, LLC v. Doe*, No. 14-20393, 2014 WL 11958625, at *2 (S.D. Fla. July 17, 2014) ("While the undersigned agrees the IP subscriber is not necessarily the infringing individual, Plaintiff's burden at this stage is only to demonstrate plausibility. . . . To that end, Malibu Media has alleged a plausible link between the subscriber assigned IP address 66.176.59.75 and the copyright infringement, and any factual disputes are inappropriate at this stage.") (citations omitted); *Malibu Media, LLC v. Doe*, No. 14-1280, 2014 WL 12616840, at *2 (E.D. Pa. May 19, 2014); *Malibu Media, LLC v. John Does 1–11*, No. 12-3810, 2013 WL 3732839, at *3–4 (S.D.N.Y. July 16, 2013); *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) ("[E]very court to have addressed this issue has found a sufficiently alleged copyright infringement claim based on BitTorrent technology, even when the defendant was merely identified with an IP address.").

*Holdings, LLC v. Doe*, No. 19-00167, 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019) ("In sum, Defendant claims innocence.  While this may be true, at this juncture, Plaintiff is simply attempting to ascertain the subscriber's identity, and is, therefore, permitted to subpoena the ISP for the defendant's identifying information, and conduct an initial investigation into the defendant.").

"[W]here the identity of alleged defendants will not be known prior to the filing of a complaint ... the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."  *Soo Park v. Thompson*, 851 F.3d 910, 928 n.21 (9th Cir. 2017) (citation omitted); *see also Singletary v. Penn. Dep't of Corr.*, 266 F.3d 186, 201 n.5 (3d Cir. 2001) (discussing use of John Doe defendants as placeholders where identifying information "is in the possession of the defendants, and many plaintiffs cannot obtain this information until they have had a chance to undergo extensive discovery following institution of a civil action.").  The ISP's subpoena response will allow Strike 3 to complete its investigation, and Defendant cannot in good faith argue that it is impossible for Strike 3 to uncover the identity of the infringer with the ISP's response.  *See Malibu Media v. Rahuse*, No. 14-6976, 2015 WL 2231853, at *4 (D.N.J. May 11, 2015); *see also Strike 3 Holdings, LLC v. Doe*, No. 19-723, 2019 WL 2996428, at *3 (N.D. Cal. July 9, 2019).

36

At this stage of the litigation, when Plaintiff does not know Defendant's identity or address, it is difficult to plead any set of facts that would specifically connect Defendant to the infringement beyond simply being the subscriber. Without knowing who Defendant is, Plaintiff cannot use its investigator's evidence of infringements of other works (*e.g.*, mainstream movies, music, books, software, and videogames) using this IP address to connect Defendant to the infringement of Strike 3's works. This is true of nearly every copyright infringement claim based on infringement through the Internet. However, nothing in *Cobbler Nevada* nor *Glacier* would indicate the Ninth Circuit sought to prevent copyright holders from combating internet piracy all together. To the contrary, *Glacier* specifically recognizes that a case such as this one is true to the purpose of the Copyright Act:

> Inherent in the Act's purpose is that 'a copyright holder has always had the legal authority to bring a traditional infringement suit against one who wrongfully copies.' In the Internet Age, such suits 'have served as a teaching tool, making clear that much file sharing, if done without permission, is unlawful[,] and apparently have had a real and significant deterrent effect.

896 F.3d at 1041 (internal citations omitted). No court interpreting *Cobbler Nevada* or reviewing arguments similar to Defendant's have held that *Cobbler Nevada* closes the door on the early discovery sought here.[18]

---

[18] *See e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-2648, 2019 WL 78987, at *3 (S.D.N.Y. Jan. 2, 2019) ("[F]ollowing *Cobbler Nevada*, district courts in the Ninth Circuit have continued to allow plaintiffs to subpoena ISPs for defendants' contact information, reasoning that the defendants' defenses to the claims are more properly

Accordingly, not only does *Cobbler Nevada* not help Defendant in any way on this Motion, it actually *defeats* Defendant's Motion.

## VII.   STRIKE 3 DOES NOT OPPOSE DEFENDANT PROCEEDING ANONYMOUSLY

Strike 3 does not oppose allowing Defendant to proceed anonymously in this case.  As Defendant notes, Strike 3 has previously consented to similar protective orders.   *See* [ECF No. 6-3, 34–39].   "Strike 3 Holdings has a policy 'to keep confidential the identity of not only [its] subscribers, but even those [it is] pursuing for copyright infringement,' based on its desire to protect the consumer's personal choice to view adult content," *Strike 3 Holdings, LLC v. Doe*, 325 F.R.D. 499, 503 (D.D.C. 2018), and has never opposed this relief.

---

resolved during a later-stage motion to dismiss."); *Strike 3 Holdings, LLC v. Doe*, No. 19-73, 2019 WL 777416, at *3 (S.D. Cal. Feb. 21, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-00232, 2019 WL 591460, at *2 n.1 (N.D. Cal. Feb. 13, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-04993, 2019 WL 468816, at *2 (N.D. Cal. Feb. 6, 2019) ("Defendant's reliance *on Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) to preclude discovery based on factual innocence is misplaced."); *Strike 3 Holdings, LLC v. Doe*, No. 18-2720, 2018 WL 6649504, at *3 (S.D. Cal. Dec. 18, 2018); *Strike 3 Holdings, LLC v. John Doe*, No. 18-1856, ECF No. 5 at *2 (D. Nev. Oct. 17, 2018) ("Interpreting *Cobbler* to require plaintiffs to identify defendants without allowing plaintiffs the tools to do so would not serve the interests of justice.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Strike 3 Holdings, LLC, respectfully requests that the Court should enter an Order (1) denying Defendant's motion to quash, and (2) granting Defendant's motion for a protective order (on consent).

DATED: July 22, 2019            Respectfully submitted,

                      **THE ATKIN FIRM, LLC**

                      *Attorneys for Plaintiff,*
                      *Strike 3 Holdings, LLC*

                      By:    */s/ John C. Atkin, Esq.*
                              JOHN C. ATKIN